was awarded, broad categories of costs under Section 19-20, and whether the district court properly reviewed the very general and conclusory submissions the case provided in support of its costs. On the first issue, on the question of prevailing party, well, isn't it pretty hard, Mr. Feldman, to say that the case isn't a prevailing party here? Now, it is certainly true that they did not win on their indefiniteness argument. No question about it. But it does seem that they came away with being in the position that you did not want them to be in. In other words, they were off the hook because they were found not to have infringed. And it does seem to be that in that circumstance, when that's really what all the shouting is about under the case law, that they are a prevailing party. Well, Your Honor is correct that they prevailed on their infringement, on the infringement claims. Case brought a separate counterclaim for invalidity, proposed several bases for that, and lost on all of them. It wasn't just indefiniteness. To be realistic about this, and I guess I have the same problem with this issue that Judge Schall does, I mean, if we were to say, okay, we're going to leave, in the first case, we're going to leave the parties exactly where they were when they walked in here today, I think Mr. Bowman would be a happy man and Mr. Chestnut would not. Is that a fair statement? Sure it is. I mean, doesn't that sort of answer the question of who prevailed? Well, I'd like to bring to the fore here another point, which is that case not only defended this case based on non-infringement and invalidity, it also brought a completely separate permissive counterclaim for breach of fiduciary duty, conspiracy, aiding and abetting, and knowing participation. That happens almost all the time. Defendants come in with all sorts of different theories, many of which fall by the wayside along the line, but if they ultimately end up with no liability, they're usually pretty happy. I think it's a different situation, Your Honor, when the defendant raises a permissive counterclaim, a claim that they were not required to bring in this case, they could have brought it in any other litigation, in which it raised very substantial issues. I mean, a case was arguing that Mr. Kinzenbaugh's attorneys were guilty of breaches of fiduciary duty, that Mr. Kinzenbaugh conspired with his attorneys to harm case. Those are very substantial claims, which are totally separate from any of the patent issues in this case. And that litigation consumed a fair amount of the party's time. There were six depositions, extensive motion for summary judgment. I would also point out that the trial court, when it granted summary judgment, went through each of the factual bases for the case's position and found absolutely no evidence for it. So I don't think it's an exaggeration to say that not only did they bring a permissive counterclaim, which raised very serious and substantial issues, seeking damages in the hundreds of thousands of dollars, but those were found to be totally baseless. I think that distinguishes it. Would you say that nobody's a prevailing party? That's correct. You just say, in your view, on this prevailing party issue, it's a wash. That's correct. Now, on the turning to the specific costs that are involved, the key point seems to be, how do we view the term exemplification, certainly with respect to the big ticket items that we have here? There's two big chunks. Those are the key items for our purposes. And am I correct in thinking, number one, or I think I am correct in thinking we look to the law of the regional circuit? That's correct. And in this case, we have the Eighth Circuit. Now, as far as I can tell, and maybe my colleagues have found something different, but it doesn't seem that there's any Eighth Circuit law on this exemplification point. Is that correct? The only thing we found was a very recent case, Smith v. Right, the 06 case. I'm sorry? Very recent. Very recent, 2006 case, which took a literal interpretation, looked at the language of the statute, and found that there was an award of delivery costs in connection with that. Yeah, but that wasn't exemplification. No, that wasn't exemplification. Exemplification is the biggie here. And there's nothing on exemplification. What do we do then when we're in the situation, and I agree with Judge Bryson, what do we do then when we're in the situation, we're controlled, we have to follow Eighth Circuit law, but there's nothing in the Eighth Circuit. Do we just then make a judgment as to what we think is the best call from the competing circuit decisions, or do we do something else? Well, I think that the two cases that have analyzed this, in very similar situations where there's a dearth of court of appeals decisions on the topic, are Covis and this Court's recent decision in Summit Technology, one looking at First Circuit, one looking at Sixth Circuit law. And in both those cases, there was very little to go on from the court of appeals of the circuits where the trial was held. And what this court did was to analyze the language of the statute and to determine what the language of the statute would, what the result would be for exemplification in 1920. I think for the court to reach a decision in this case, when there's no law in the Eighth Circuit one way or the other, that says this broad category of cost called exemplification, PowerPoint presentations, video models, and so on and so forth, come under exemplification would be way outside of, and contrary, I think, to what the court found in Summit Technology and in Covis. I think that those cases objectively tried to analyze what does the statute hold. And in a situation where there isn't any Eighth Circuit law, that should govern. In addition, I think the weight of authority is on our side on this one. The Seventh Circuit, which admittedly is right next door, is basically the only circuit that we found that has a strong policy in favor of allowing these kinds of broad costs. So I think that if you look at the weight of authority, or you look at what the language of the statute has, that's where you come out. I wanted to mention one other point on prevailing party, and that is if you look at the trial court's decision in this case, there really isn't any analysis of the prevailing party issue. This court is supposed to review prevailing party under an abuse of discretion, but the trial court really never looked at whether the cases in validity, counterclaims, or anything else would render it a prevailing party or not a prevailing party. How do we know the district court didn't look at it? I'm sorry? How do we know the district court didn't look at it? Well, there's nothing in the decision. Well, that happens a lot. That's correct. I can't say other than that. But at least as to what's reflected in the record, there's no analysis of it. This is not a tremendously complex case. It consumed eight days and one hour of trial testimony, and the award of $303,000, we think, is something that bears examination. Exemplification should not be found to include trial graphics, physical models, videos, rentals of machines, trial boards, and that sort of thing. Those are obviously the big-ticket items. What's the matter with trial boards? Why aren't those copies of documents? Trial boards, when they're demonstrative evidence, would just be for the assistance of counsel, and that's the only record that we have here. We think that the trial court— But our cases didn't deal with the trial boards, did they? Our cases didn't deal with the trial boards, right? Coates and Merritt didn't deal with trial boards. That's correct. Let me make sure I know. I was actually curious about this. What exactly do we mean when we refer to trial boards? I want to make sure I understand the exact— It's those things, right? Yeah, that's right. Used before the jury?  All prepared, and some of which were used with the jury? I believe so. Right. Which raises another point that we made— But that's it. I mean, it's not— That's my understanding. Which, excuse me, was when you said for the use of counsel. I mean, they're intended to be displayed to the finder. In fact— That's correct, but they're not evidence going in. They're not copies necessarily of exhibits in the case. They're demonstrative exhibits. And this raises one of the primary— But why aren't they copies? I mean, statute says copies. It said large copies of documents. I think that that refers— I mean, are you suggesting any time a document's enlarged, it's not a copy? Well, my view on that is if you allow copies to consume anything that's copied, then it'll take over basically everything, because there's some notion of copying that's involved in a lot of this. I think copies— What's the line you think ought to be drawn? I think copies is intended to involve, if you have to copy a document in order to introduce it into evidence, then it's recoverable. And cases—the supporting documentation in the case provided here is really inadequate to tell what any of these costs went to. What cases say that copies are limited to those that are introduced into evidence? I think we would— That are received by the jury. Correct. That would be fine. Yeah, but what case says that? Is this not working? Oh, I think—I'm sorry, I'm not hearing you. I think that Coase may say that, but I'd have to check. I believe— No, that was a different case. No, that's a different case. I don't think that he said that. No. But in any event, I guess the trial board's issue is that's about $3,000. Right. No, the big numbers are trial graphics and physical models and so forth. Yeah, but you haven't selected only those things which make a big difference. We have. We've gone through the entire thing. We have gone through the entire thing. That might not have been a good idea. Once you're there, we really— You're going into the pillbox with a flame thrower, a satchel charge, and bangle our minds, right? Well, our position was that Coase had the ability to support That's kind of what it is. I see my yellow lights on. Coase provided a three-page affidavit in support of very broad invoices. There was no effort to indicate what these broad categories related to. And when the trial judge said that she found trial graphics and some of these models to be helpful, we don't even know whether the invoices made their way into the trial for the things that the judge found to be helpful. So I think there's a real gap in the record on this. All right, Mr. Sullivan, thank you. We'll hear from Mr. Boland again. Mr. Boland, welcome back. Thank you, Your Honor. After your short rest over there. It was a delightful rest. Pitching on 15 minutes rest. Actually, it might have only been 12. In terms of the prevailing party, I think the Brooks case is so clear that I'm not going to spend a lot of time on it. It covers our situation precisely, except in the context of attorney's fees versus cost. But yet, since attorney's fees usually exceed the amount of costs at issue in this type of setting, if anything, the showing should be more difficult to be a prevailing party under a fee-shifting statute such as Brooks. The Ruiz case that the appellants cite in their brief was a situation where Ruiz invalidated the patent and the court did, in fact, characterize him as a prevailing party. Yes, it exercised its discretion not to award costs under the facts of that case, but that doesn't change the prevailing party analysis. And in the Hormone v. Genentech case, also cited by the appellants, at the lower level, there's no doubt that the defendant was a prevailing party. It was granted summary judgment of no infringement and invalidity for lack of enablement. Well, let me ask you, I thought that Judge Bryson's analogy was good about who would be happy if the end result today was leaving everybody where they are. And I think that—I mean, I think you have a strong argument on the prevailing party issue. But turning to the specific big-ticket items that are at issue on costs, where do we go on those? Because how do you argue that those are exemplification? Mr. Feldman is urging us to follow the approach that was taken in Summitt and Coase, and those approaches would seem to lead to the conclusion that these items don't fall under the exemplification umbrella of 1920. What do you say about that? You know, they're two big items. I understand, and I'll limit my comments to those. Absolutely. It's a neighbor, right? You know, we talked about that. Does the law bleed over across the river? No, but I think it's fair to look at what the courts actually do there. In the Cefalu case, which is the Seventh Circuit authority that Judge Reed relied on here— Well, if you start comparing circuits, remember, you're going to have to come back in fairness and reference all the circuits as to go the other way. I understand. That is more numerous than the Seventh, which stands, as far as I can see, all by itself. Well, certainly, Your Honor, if you look at the Ninth, the local rules permit— Local rules. That's quite different from what the Ninth Circuit's common law is under 1920. And the Seventh Circuit in Cefalu looked to the Eighth Circuit, the McDowell case, Eighth Circuit authority on transcripts, and Judge Reed, in this case, relies heavily on Cefalu, Seventh Circuit authority. So I think that we recognize that the Summit case is out there, and I recognize that some of this panel were members of the Summit— But when you say that Judge Reed relied on the Seventh Circuit as support for why we should infer that the Eighth Circuit would adopt the same rule as the Seventh Circuit, you're talking about the district court judgment in this case, which is under review. I don't see that you can—that's bootstrapping. But in Goss, as well, Your Honor, she— That was her opinion, too. Presumably, we know what Judge Reed thinks. Yes. Unfortunately, Judge Reed, number one, isn't on the Eighth Circuit, and two, isn't a majority of Eighth Circuit judges, even on a panel. I understand that, Your Honor. But I think you can look at it from the standpoint, to the extent there is any authority within the district courts in the Eighth Circuit, they've looked to the Seventh Circuit. And you can also look at it this way, Your Honor. Was there a rational basis for what she did? She looked at the showing that was made. She looked at the law that she believed that should apply, that she's applied consistently in her other cases. Well, it's not a rational basis, Pat. The question is whether these are allowable items at all. Sure. And the legal issue, Your Honor, boils down to the statutory construction of the word exemplification in paragraph four of section 1920. That's exactly what we're talking about. And certainly, this court, in construing First Circuit law, gave it a narrow interpretation. You follow the Black's Law Dictionary definition, which is much more limited than the way Cefalu, for example, has construed it as basically the Webster's type everyday dictionary illustrating points covering a wide variety of demonstrative areas. Except that Webster's, as I discovered in connection with Summitt, has both a general definition and then a definition in which it says law, colon, and then gives the narrow definition. So I wouldn't know that I would go to Webster's as support for your broad definition since Webster's expressly acknowledges that, in law, the narrower definition prevails. And certainly, I saw that point you made in that decision, Your Honor. And I'm referring to the Seventh Circuit's interpretation of exemplification, which they did reference. I think it was Webster's there, too. And in that context, I think if this court—the question is what would the Eighth Circuit do here? Clearly, in the Summitt case, this course looked very closely at First Circuit authority. There was that Emerson case that was discussed in depth, the district court case. There were other cases. And one of the parties was arguing, well, give it an expansive definition. That's Emerson. And there was some other prior authority, or perhaps later, too, that suggested there was at least a split among the district courts. And this court then adopted the narrow reading of the statute. In the Eighth Circuit, I don't think you can analogize because we haven't been pointed to any district court authority which creates that kind of split or dichotomy. There's been an expansive reading so far to the extent—and I say to the extent authority exists in the Eighth Circuit. And we respectfully submit that this court should follow that district court line to on this particular point of exemplification. If this court does find that the Eighth Circuit would reach the broader interpretation, I don't think there's any doubt that under the Cefalu type of case, these expenses for scanning and imaging documents qualify. Those are the trial graphics charges as well as the models. The word models is expressly referenced in the Cefalu decision. So we respectfully submit that Judge Reed did not err when she looked to Seventh Circuit authority as support for her award of the trial graphics and models costs under the exemplification section of the statute. In terms of all of the remaining points that were made, in terms of these trial boards and all the travel expenses and allegedly no receipt for this or that, I'm just going to leave it that we made a showing. We included dozens of pages of receipts and bills and canceled checks, and we provided the court with an affidavit from one of our attorneys who's an officer of the court. And that showing satisfied the district court. And I don't think there's been an abuse of discretion that's been established for an award of any of the more minor costs that are issued here. And in terms of the exemplification issue, one more point I'd like to make. You know, to the extent there's any policy issues here involving construction of the term exemplification, I'd just like the court to keep in mind that under the modern way that complex cases such as this are tried, with the need to illustrate all these kinds of drawings and graphs and machines and how parts work together and so on, with technological advances over the last years, today it really is possible, and I've seen this firsthand, it's possible to conduct trials in a much more expedited fashion than it was under the old system, where everything was on paper, you had to make sure everybody had copies, people were turning with magnifying glasses and looking at things, and the ability to have someone there operate software machinery where you can show exhibits and you can call out sections and blow them up so everybody can see and everybody in the courtroom is on the same page and it happens like this in real time, one after the other. I respectfully submit that that's the view of exemplification that embodies the way that the papers, the copies of the papers themselves are being used and illustrated in high-tech patent cases today. Let me ask you about these trial boards briefly. I understand they're confined just to the blow-ups that fit on an easel, that sort of device, and we're not talking about PowerPoint, we're not talking about other demonstrative exhibits, I take it. These are just items like the ones you have back there. The trial boards are those things, we had them of various sizes and they were used to illustrate various documentary exhibits. Now how many of the trial, let me ask the question this way, was the $3,359.50 attributable entirely to trial boards that were actually used or just trial boards that were prepared whether or not they were actually used in trial, or do you know? I don't know your question. I do know this, that at the beginning of trial, as in every case, each party submits a list of exhibits and here it was in the hundreds for each side and only a portion of those get admitted into evidence and are actually used depending on what happens during the course of the trial. I will say it's possible we had boards made that were on exhibits that we didn't use or that we just showed electronically, but my belief is we didn't have all that many made and I used quite a bit of them. There was an easel up practically during the entire time. So unless the panel has further questions, thank you very much. Well, thank you. Mr. Kelman, you have whatever's left, I think just over three minutes on your rebuttal. I probably won't use it all, Judge. I think one of the questions that was asked here about whether the trial boards that are being charged were the ones that were actually used at trial gets at a real problem with cases' documentary support for its bill of costs. You can't tell, that's a small item, but you can't tell on most of these big items whether any of this actually made its way into the courtroom. And the trial graphics is a very good example of that. There are category after category of charges on the invoices amounting to tens of thousands of dollars and you have no idea whether that was actually something that was used at trial or whether it was something they discarded or whether it's just conversations with attorneys. That's a different argument than whether the costs are precluded entirely. I agree with you. It's a question of whether the particular costs were necessary. I agree with you, but our position is both that the costs generally are not allowable and that even as to those that the court may find to be allowable, their three-page affidavit, which simply said these were costs that were necessarily incurred in this litigation, is a woefully inadequate support for their costs in any category. And we've pointed that out in our briefs on a case-by-case basis. In conclusion, all I would say is that following the Court's decision to summit in Covis, I believe it will be incongruous for this Court to decide that it's the broad categories of exemplification the cases seeking in this case are justified under Section 1920. Let me ask you this question, and I think we're foreclosed for now from deciding this, other than as the way the parties have argued it as a question that we should look to the circuit law on. But do you think there is an argument to be made or should we be thinking that this is an issue which comes up in a sufficiently distinctive fashion in patent cases, that perhaps we shouldn't be so quick to assume that under our usual, we look to circuit law for general procedural questions, we look to our law or make our own law for questions that relate more directly to the unique situation of patent cases. Do you think that this is the kind of issue that perhaps we should consider viewing as a federal circuit issue as opposed to going circuit by circuit and trying to do a kind of eerie type analysis of the law in each circuit? We're three down and nine to go by my count, and I don't know, as fun as these cases are, I don't relish doing nine more times trying to figure out what the circuit law is out there when frequently there really isn't very much, and this case is a perfect example. I'm honored that you would want my opinion on this issue. Practitioners have a much better sense of these things than we do, and you can help us with this. I think that the issue of simplification is one that will come up in cases. I don't think patent cases are all that unusual in that sense. I think that the issue of the breadth of 1920 sub 4 and exemplification comes up in a lot of cases, I think, or will come up in a lot of cases. At least any complex commercial case, I guess, is not going to be distinguishable, is it, from a patent case. The thing that struck me about this case, for example, was when we talk about renting large pieces of machinery, we're talking about things that probably don't happen all that frequently outside of patent cases, but I suppose in terms of trial boards and the videos and that sort of thing, we're talking, these days, about virtually any large commercial, at least any large commercial jury trial. Even not so large cases. A lot of the cases, in terms of models, have to do with personal injury cases, which, you know, can be all different sizes. That's fair. Well, I withdraw the question. Thank you. Mr. Feldman, thank you. Ms. Lowell, thank you. The case is submitted. The third case in which we'll hear oral argument this afternoon is number 05-3161, King v. United States Postal Service. Thank you.